## Housatonic Bank & Lee Bank *vs.* Calvin Martin & another, Administrators.

Where a mortgage of goods was made, subject to a prior mortgage thereof, and they were attached by the mortgagor's creditors, and replevied by the first mortgagee, and on the trial of the action of replevin, the first mortgage was decided to be void, and judgment was rendered for a return of the goods to the attaching officer ; a demand on the officer, by the second mortgagee, ten days after the rendition of such judgment, accompanied with an account of the debt for which the goods were liable, conformably to the Rev. Sts. *c.* 90, § 79, was held to be within a reasonable time, although was more than two years after the goods were attached.

When goods are attached, which have been conveyed by one mortgage to two persons to secure a gross sum of money to each, a statement by them to the attaching officer, on their demanding payment of him, is sufficient, under the Rev. Sts. *c.* 90, § 79, if it set forth the gross sum due to each of them.

A debtor, on being called upon by A., one of his creditors, to give security, promised to do so by a mortgage of his personal property : He thereupon directed his attorney to prepare, 1st. a mortgage of his personal property to secure B., another of his creditors ; 2d. a mortgage of the same property, subject to the first mortgage, to secure A. ; 3d. a general assignment of all his property to B., under *St.* 1836, *c.* 238, subject to the two mortgages : The mortgages and assignment were all executed and delivered on the same evening, in the order in which they were directed to be prepared, A not knowing of the mortgage to B. till he received the mortgage to himself, and having no knowledge of the assignment, until after it was executed and delivered, and never afterwards assenting thereto : The mortgage to B. having been adjudged void, because it was part of the assignment, and in contravention of said *St.* 1836, it was *held* that A.'s mortgage was not part of the assignment ; that it was valid by the common law ; and that he was entitled to hold the mortgaged property against the attaching creditors of the mortgagor, in the same manner, and to the same extent, as if the mortgage to B. had not been made.

Knowledge of facts, by a mere stockholder in an incorporated manufacturing company or bank, is not notice to the corporation of the existence of those facts.

THIS was an action against the administrators of Henry C. Brown, late sheriff of this county, for an alleged trespass by him, on the 3d of August, 1837, in taking and carrying away, by his deputy, John Holden, a large amount of the plaintiffs' goods. The defence was, that said goods were the property of Caleb B. Turner & Wells Laflin, and were, on said 3d of August, attached by said Holden, upon several writs against them. The trial was before *Wilde,* J. from whose report of the case it appeared that the plaintiffs claimed the goods under a mortgage thereof, made by said Turner & Laflin, on the 20th

of April, 1837, to the Housatonic Manufacturing Company, (a corporation,) and John King, Jr., and which was assigned by said company to the plaintiffs, on the 6th of May, 1837, and assigned, by said King, to the Lee Bank, on the 23d of September, 1839.

At the time when said mortgage was given, said Turner & Laflin were indebted to the Housatonic Manufacturing Company for goods sold and for money lent, the sum of about $15,000, for which, at different times, as the goods were sold, said Turner & Laflin had given to said company their notes of different dates, payable generally at four months, in New York or Troy, with an express parol agreement, made before the goods were delivered, that said notes should not be received as payment for the goods, until paid. These notes had been discounted for said company by the Housatonic Bank and the Lee Bank ; were indorsed by said company, and held by said banks, at the time of the making of said mortgage ; and were unpaid at the time of the trial. One of these notes fell due on the 16th of April, 1837, and was protested for non-payment. Another was to become due on the 20th of said April, and others in a few days afterwards.

Under these circumstances, P. D. Whitmore, the agent of said company, sent said King to Adams, where said Turner & Laflin resided, for the purpose of procuring from them security for the debt due from them to the company. Wells Laflin, one of the firm of Turner & Laflin, returned immediately with said King to Housatonicville (the place of said company's business) on the morning of April 19th, and there, on being pressed by said Whitmore for security, said Laflin agreed with said Whitmore to give to said company the required security, by a mortgage on personal property. Said Whitmore then proposed to go with said Laflin and procure the mortgage to be made ; but Laflin objected, saying that if they were seen together, it might excite inquiry ; and he promised, upon his honor, to get the mortgage drawn, take it to Adams, execute it with Turner, and deliver it to King, who was to meet said Laflin at Adams for the purpose of receiving it.

Before going to an attorney to get the mortgage drawn, said Laflin consulted with his brother, who advised him " not to move " until he had secured his father, Heman Laflin, and his father-in-law, Abner Perry, who were indorsers of a large amount of said Turner & Laflin's paper. Said Laflin concluded to secure his father and father-in-law, but designedly kept this purpose from the knowledge of said Whitmore and King ; and he directed his attorney to draw the following instruments : 1st. A mortgage of personal property from Turner & Laflin to Abner Perry, Heman Laflin and Gershom Turner, to secure them for their liabilities for the mortgagors, and also to secure $ 1600 due from the mortgagors to Walter Laflin and J. M. Boies : 2d. A mortgage of the same property to the Housatonic Manufacturing Company, subject to the previous mortgage, to secure the aforesaid sum of $ 15,000, and also to secure said King about $ 600 : 3d. A general assignment of all said Turner & Laflin's property to said Abner Perry, Heman Laflin, and Gershom Turner, subject to said mortgages, for the benefit of all their creditors. Said Wells Laflin told said attorney that the moving cause of his and Turner's making the assignment was their being pressed for security by the Housatonic Manufacturing Company. He designedly kept from the knowledge of Whitmore and King his intention to make a general assignment, and requested the attorney to keep it secret.

Said mortgages and assignment were drawn by the attorney at Lee, and by him taken to Adams. The mortgage to the Housatonic Manufacturing Company was there executed by Turner & Laflin, at the House of Wells Laflin, in the evening of April 20th, and delivered by the mortgagors to said King, he being a stockholder and director of said company, and was accepted by him, in behalf of said company — the said mortgage to Abner Perry and others having been previously executed and delivered to said Perry. Said Perry, in behalf of himself and his co-mortgagees, and said King, in behalf of said company, immediately went and took possession of said mortgaged property. While said Perry was absent, the last clause, and the attestation were added to the assignment, and also the certificate of acknowledgment. and

oath, and the seals. After said Perry's return, the assignment was executed by the assignors and by him, and was delivered to him. This was between 7 and 11 o'clock, P. M. of April 20th, and between half an hour and two hours after the execution of the mortgages. Said King was not present. After the execution and delivery of the assignment, said Perry went to find some one to carry the assignment to Gershom Turner, to be executed by him, and to the register's office to be recorded. He returned with said King, and delivered to him the assignment, with instructions to procure said G. Turner to sign it, and then to carry it to the register's office. There was no evidence that King read it, or was told what it was. Wells Laflin testified that he *presumed* King did know what it was. He also testified that the conveyances executed on the 20th of April were intended to convey all the property owned by Turner & Laflin jointly, and by said Laflin separately. The mortgages included all the personal property, except goods in Philadelphia, worth $600 or $700, and choses in action to the amount of several thousand dollars, part of which have proved to be unavailable.

The condition of the second mortgage was thus : " Now if the said Caleb B. and Wells shall well and truly pay the said Housatonic Manufacturing Company the sum of $15,000, and the said John the sum of $600, then this deed shall be void," &c.

The draft of the assignment remained in the pocket of the attorney until after said King went out to take possession on his mortgage ; and said mortgage was left by said King with the attorney to be carried to the town clerk's office to be recorded.

Neither Whitmore, agent as aforesaid, nor said King, had any knowledge that said assigment was drawn or contemplated, until after it was executed and delivered. Said Whitmore had no knowledge that Turner & Laflin intended to make said mortgage to Perry and others ; nor did said King know it until the same was delivered to said Perry. Said Whitmore knew of the mortgage to the Housatonic Manufacturing Company, before he was informed of the assignment.

Said Perry remained at Adams, and held possession of the mortgaged property until the goods were attached by said Holden, and forbade his interfering with the goods, at the time he made the attachment. Part of the mortgaged goods were replevied by Perry and others, the first mortgagees, and Holden had judgment for a return thereof at the September term, 1839, of this court. They were not returned, but the replevin bond was satisfied by payment and security.

Said first mortgagees commenced an action against the defendants' intestate for said Holden's act in attaching the residue of the mortgaged goods, and became nonsuit at the May term 1840.

On the 25th of September, 1839, the plaintiffs made two statements, in writing, of the demands for which said mortgaged property was liable, and delivered the same to said Holden. The second statement was as follows :

" To John Holden, Deputy Sheriff. Sir, — On the twentieth day of April, 1837, Caleb B. Turner and Wells Laflin, then of Adams, executed to the Housatonic Manufacturing Company and to John King, Jr., a mortgage of the following articles of personal property. [Here the articles were enumerated.] To secure to the said Housatonic Manufacturing Company the payment of about fifteen thousand dollars due from said Turner & Laflin to them, and to said King, the payment of about six hundred dollars due from said Turner & Laflin to him. And on the 6th day of May, 1837, the said Housatonic Company transferred and assigned their debt against said Turner & Laflin, and the mortgage aforesaid, to the President, Directors & Company of the Lee Bank, and to the President, Directors & Company of the Housatonic Bank ; and since said 6th day of May, said King has assigned his debt against said Turner & Laflin to said Lee Bank, and his interest in said mortgage. The President, Directors & Company of the Housatonic Bank, and the President, Directors & Company of the Lee Bank, have been informed that the property aforesaid has been attached by you on a writ in favor of the Adams Bank against said Turner & Laflin, and on writs in favor of divers other persons, against said Turner & Laf-

lin. This is to notify you that there is now due on the demands of said Housatonic Manufacturing Company against. said Turner & Laflin, and secured by the mortgage aforesaid, and assigned to said Lee Bank and Housatonic Bank, the sum of $ 16,052·46 ; and that there is now due on the demand of said King against said Turner & Laflin, secured by mortgage and assignment as aforesaid, the sum $ 681·89, amounting in all to $ 16,734·35. The payment of which sum said President, Directors & Company of the Housatonic Bank, and the President, Directors & Company of the Lee Bank now demand of you."

The first statement delivered to Holden did not contain an enumeration of all the articles mortgaged, but mentioned only " fifteen thousand pieces of calico and cotton goods, and fifty thousand bricks," and demanded a delivery of " all the personal property mortgaged " to the Housatonic Manufacturing Company and to King. Said statement set forth, as due to the Housatonic Bank, " the sum of $ 1206·74, due July 4th, 1837," and seven other sums due, at several different times specified in said statement, amounting, in the whole, to $ 11,057·97.

The several sums due, on different days, to the Lee Bank, were set forth in the same manner, amounting to $ 3610·97.

To each of these aggregate sums was added the interest due on the several sums of which they were composed, from the times when the latter sums respectively became due, to the day of said statement, viz., interest due to the Housatonic Bank, $ 1554·99, and to the Lee Bank, $ 510·52. And to each of the final aggregates thus made up, as due to each of said banks, were suffixed these words, — " if computation is wrong, it may be corrected."

In this first statement, no notice was taken of the sum due to King, nor any demand made on Holden to pay the sums men tioned therein.

W. Porter, Jr., the attorney of the Lee Bank, had knowledge, in the month of August 1837, of the attachments made by Holden ; and one reason why the plaintiffs did not make an earlier demand and statement was, that the aforesaid suit by the first mortgagees was pending.

The attorney who drew the mortgages and assignment was a stockholder in the Lee Bank. Walter Laflin, a stockholder and director in said bank, assisted in drawing the mortgages, and knew that said attorney was at the same time drawing the assignment. Wells Laflin, at the time of the making of said mortgages and assignment, was the owner of one share in the capital stock of the Housatonic Manufacturing Company.

On the foregoing evidence, a verdict was taken for the plaintiffs, for the sum of $20,000, which was to be altered, or set aside and a new trial granted, or such other disposition of the cause was to be made, as the court should order.

*Wells* and *Robinson* (*D. N. Dewey* was with them), for the defendants. The demand and statement were not seasonably made by the plaintiffs. The Rev. Sts. *c.* 90, intended to give a beneficial power to creditors of a mortgagor ; but if they can be called upon, two years after an attachment, and be compelled to pay the value of the goods, this statute power may operate to their ruin instead of their benefit. The demand should have been made while the property was in the officer's hands and could be delivered by him, and while the attaching creditor could give up his attachment and surcease his suit. In *Johnson* v. *Sumner*, (*ante*, 172) a year's delay was excused only because the plaintiff was in the mean time pursuing his claim in another way. The statements were too general, giving aggregate sums without the particulars. *Allen* v. *Clark*, 17 Pick. 47. *Johnson* v. *Sumner*, *ubi sup*. Besides, as the attaching creditors succeeded the first mortgagees, the plaintiffs should have called on the defendants to pay the surplus only, after deducting the amount secured by the first mortgage.

The mortgage, now held by the plaintiffs, cannot avail them. If Turner & Laflin had made it in contemplation of an assignment, it would have been void. *Locke* v. *Winning*, 3 Mass. 325. But it was a part of the assignment, and void as contravening *St.* 1836, *c.* 238. The case of *Perry* v. *Holden*, 22 Pick. 269, being like this, in all material circumstances, seems decisive against the plaintiffs.

The plaintiffs' ground is, that they are not affected with the

knowledge of the mortgagors' intention to make the assignment. But King had knowledge, and as Wells Laflin was a member of the Housatonic Manufacturing Company, and the attorney who drew up the mortgage and assignment was the attorney and one of the directors of the Lee Bank, the plaintiffs, therefore, had knowledge sufficient to put them on inquiry, and must stand on the same ground as if they had actual knowledge. *James* v. *Morey*, 2 Cow. 310.    *Bignold* v. *Waterhouse*, 1 M. & S. 259.    *Alderson* v. *Pope*, 1 Campb. 404, *note.*

The plaintiffs, being second mortgagees, have only an equitable title to the property ; and can secure themselves only by paying the first mortgage. *Baldwin* v. *Norton*, 2 Connect. 164. At most, as they took subject to the first mortgage, they can recover only the value of the equity mortgaged to them ; as they are estopped to deny the validity of the first mortgage.    *Green* v. *Kemp*, 13 Mass. 515.    *Commonwealth* v. *Andre*, 3 Pick. 224.    1 Saund. Pl. & Ev. 37, *et seq.*

*Porter* and *Byington*, for the plaintiffs.    The statement and demand were made in a reasonable time.    The plaintiffs could not sue while the first mortgage was in force, and they made their demand in a few days after that mortgage was adjudged to be void.    The account stated the exact amount due to the plaintiffs.    *Whitwood* v. *Kellogg*, 6 Pick. 420.

In *Green* v. *Kemp*, cited by the defendants, an equity of redemption, *eo nomine*, was conveyed ; and the court said, if the tenant had purchased *the land*, he might have avoided the previous usurious mortgage.    In the case at bar, *the goods* were conveyed, subject to the mortgage which has been adjudged void ; and the attaching creditors cannot take precedence of the second mortgagees.

In the former suit (*Perry* v. *Holden*, 22 Pick. 269) the first mortgage and the assignment were held to be one transaction, and void as in contravention of *St.* 1836, *c.* 238.    But the second mortgage was no part of the assignment.    The mortgagees had no knowledge that an assignment was contemplated, and have not in any way assented to it.

The statute of 1836 did not prohibit preferences by mort-

gage, or by attachment, but only preferences in general assign-
ments in trust for creditors ; and the plaintiffs have as good legal
right under their mortgage, as an attaching creditor under an at-
tachment.    The mortgage, being prior in time, gives priority of
right.    *Lupton* v. *Cutter*, 8 Pick. 303.    A mortgage is not a
conveyance in trust.    *Bates* v. *Coe*, 10 Connect. 293.

   When several instruments are construed to be one transac-
tion, it is on the ground that such construction gives effect to the
intention of the parties.    *Wallis* v. *Wallis*, 4 Mass. 136.    *King*
v *King*, 7 Mass. 499.    *Carey* v. *Rawson*, 8 Mass. 159.    *Stow*
v. *Tifft*, 15 Johns. 458.    *Clap* v. *Draper*, 4 Mass. 267.    The
mortgage in question and the general asssignment were indepen-
dent instruments.    The former would have been made, if the
latter had not been ; and to construe them as one would thwart
the parties' intentions.    *Isham* v. *Morgan*, 9 Connect. 374.
If the reference, in the assignment, to the mortgage, makes the
two one transaction, then any grantor, by referring to a subse-
quent instrument which he designs to execute, may defeat or
vary the first deed.

   But if the second mortgagees knew (which, however, the
evidence disproves) after they demanded security, that Turner
& Laflin intended to make an assignment, that knowledge would
not have impaired the second mortgage.    *Warden* v. *Adams*,
15 Mass. 233.    *Cushing* v. *Hurd*, 4 Pick. 253.    *Holman* v.
*Johnson*, Cowp. 342.    *Hodgson* v. *Temple*, 5 Taunt. 181.    Or
if this position be denied, yet even if it had been shown that
King had such knowledge, before the mortgage was made, it
would not have affected the Housatonic Manufacturing Compa-
ny, the other mortgagee.    *Lawrence* v. *Tucker*, 7 Greenl. 195.
If such knowledge by King would have vitiated the mortgage,
as it respected his interest therein, still the mortgage would have
been good as to the company.    *Prince* v. *Shepard*, 9 Pick. 176.
The case in 7 Greenl. *ubi sup.* is also an answer to the sugges-
tion that the plaintiffs are affected with the notice which the at-
torney of the Lee Bank had of the intention of the mortgagors
to make an assignment.

   The transfer of the mortgage to the plaintiffs, *bonâ fide*, would

have purged the fraud, if there have been any either in King or the company, or both, and enabled the plaintiffs to maintain this action as assignees of the entire mortgage. *Somes* v. *Brewer*, 2 Pick. 198. *Coffin* v. *Ray*, (*ante*, 212.)

That notice to a stockholder or director, in a case like this, does not affect the corporation, was held in *Washington Bank* v. *Lewis*, 22 Pick. 24. *Fulton Bank* v. *Sharon Canal Co.* 4 Paige, 127.

The opinion of the court (except *Dewey*, J. who did not sit in the case) was prepared by

PUTNAM, J. The plaintiffs claim the goods in virtue of a mortgage from Turner & Laflin, dated April 20th, 1837, given to the Housatonic Manufacturing Company, a corporation, and one John King, Jr. and by said company assigned to the plaintiffs on the 6th of May, 1837, and by said King assigned to the Lee Bank, on the 23d of September, 1839.

The case finds that Turner & Laflin were indebted to the Housatonic Manufacturing Company, about $ 15,000 for goods sold and delivered, for which notes were given that were not to be considered as payment until the same should be actually paid ; and the plaintiffs discounted those notes, and are, without question, the *bonâ fide* assignees of the mortgage abovementioned.

The defendants claim to hold the property, in virtue of attachments made on several writs of creditors of Turner & Laflin against them, which were made long after the assignment of the Housatonic Manufacturing Company to the plaintiffs ; to wit, on the 3d of August, 1837.

The mortgage, so assigned to the plaintiffs, was made subject to a previous mortgage of Turner & Laflin to Abner Perry and others, to secure them for their liabilities for Turner & Laflin, which was executed on the same day. Said Perry and others were, on the same day, parties to a deed of general assignment, by Turner & Laflin, of all their property, subject to said mortgages, for the benefit of all their creditors.

The officer, who made the attachments, was informed of the claim of the mortgagees, and was forbidden, by one of them, to meddle with the property. And the case further finds that

the mortgage to Perry and others, and the general assignment to them, have been adjudged to be void, as being against *St.* 1836, *c.* 238, § 11. That case is in 22 Pick. 269, and the decision of the court was announced at the September term 1839. By the effect of that decision, the first mortgage was removed, and the plaintiffs, as assignees of the second mortgage, became entitled to all the rights which would have vested in them if the mortgage to Perry and others had never been made.

The ground on which the first mortgage was declared to be void was, that it was so connected with the general assignment made by the mortgagees and by Turner & Laflin, the mortgagors and assignors, as to constitute one instrument or transaction, for the accomplishment of one and the same object ; which object was to give a preference to the said mortgagees over the other creditors of Turner & Laflin, contrary to the said *St.* 1836, *c.* 238, which provided for an equal distribution of the estate among the creditors who should become parties to such general assignment, except only debts which were preferred by law.

After the first mortgage was thus declared to be void, the plaintiffs, on the 25th of September, 1839, made their statement in writing, to the defendants, of the amount which they claimed under their mortgage, and made a demand of payment of the same. The defendants have contended that the statement was too general, and the demand too late.

The Rev. Sts. *c.* 90, § 79, require the mortgagee, when demanding payment of the money due to him, to state in writing a just and true account of the debt or demand for which the property is liable to him, and deliver it to the attaching creditor or officer. In this case, two statements were made on the said 25th of September, 1839. The last contained a recital of the mortgage to the Housatonic Manufacturing Company and to King ; a statement of the plaintiffs' title as assignees ; and the amount of the debts due to the plaintiffs as such assignees, and the demand of payment thereof. And the statement and demand are, in our opinion, sufficiently particular. It has not been intimated that the statement was unjust or untrue.

The objection most relied upon, as to this part of the case, was, that the statement and demand were not made in a reasonable time — being more than two years from the time when the attachments were made by the officer, during all of which interval of time, it is said, the officer could not know what to do with the property. Now the statement and demand should be made in a reasonable time. *Johnson* v. *Sumner*, (*ante*, 172). The mortgage, which was assigned to the plaintiffs, was made subject to the mortgage of Perry and others. If that had been confirmed, the plaintiffs would have included the amount which they would have been held to pay on that mortgage, in their claim as assignees of the second mortgage. The defendants knew of the suit which was pending between the prior mortgagees and the attaching officer, which, we have seen, was not decided until September, 1839. And the statement and demand were made upon the attaching officer immediately afterwards. There is no evidence which would justify an inference that the plaintiffs had any sinister views in withholding any information, or that they had any intent to take any course for the purpose of embarrassing the other party. *Whitwood* v. *Kellogg*, 6 Pick. 420. The plaintiffs could not know, until after the decision of the case touching the first mortgage, whether or not they might legally demand or claim of the attaching officer the money which was secured by the first mortgage. And it is not contended that the plaintiffs were guilty of any laches after that case was decided. We think that the objection made in regard to the statement of the plaintiffs' claim, and to the demand of payment cannot prevail, for the reasons before stated.

But the great point of the defence is, that the mortgage, which has been assigned to the plaintiffs, is void, inasmuch as the general assignment was expressly declared to be made subject to the mortgages which Turner & Laflin had before made, which included this mortgage as well as that which was given to Perry and others. The plaintiffs' mortgage was executed on the same day on which the first mortgage and the general assignment were executed. The plaintiffs' mortgage was said to be subject to the first mortgage : and it is strongly argued for the defendants.

26 *

that the plaintiffs' mortgage should be put upon the same ground as the first has been, and should be taken as part of the general assignment, and void, as against the statute of 1836, before cited. But the difference between the first and second mortgages consists in this, viz. that the first mortgagees were parties to the general assignment, and the second mortgagees were strangers to it. The Housatonic Manufacturing Company, by Whitmore their agent, and King, for himself, were proceeding against Turner & Laflin merely for their own security and benefit. They were not in the counsels of the first mortgagees or of Turner & Laflin. They insisted upon security. Laflin engaged, upon his honor, that the security required should be given. An the case finds that the intent of Turner & Laflin to make the first mortgage was designedly kept from the knowledge of King, and from Whitmore who was agent of the Housatonic Manufacturing Company. They were imposed upon by Turner & Laflin, and obliged to take their mortgage subject to that which was given, without their knowledge, to Perry and others. The case also finds, that Laflin designedly kept from the knowledge of Whitmore and King his intention to make a general assignment ; and his attorney was also requested to keep the same secret. The assignment was executed one or two hours after the mortgages. King was not present when the assignment was executed. The mortgage to the Housatonic Manufacturing Company and to King was delivered to King, and he, in behalf of said company, went immediately for the purpose, and took possession of the property, before the writing of the assignment was completed. Any knowledge afterwards, which the company or King might have of the assignment, without participating in the arrangement, would not prejudice their claims under the mortgage.

It is found, indeed, that Perry gave the assignment to King, after it was executed, to procure Gershom Turner to sign it, and then to carry it to the register's office to be recorded, but that there was no evidence that King read it, or that he was told what it was. Wells Laflin *presumes* that King knew what the paper contained, but no facts are stated by Laflin from which

such presumption could be made.   But if King did know the contents of the paper, there is not the least evidence that he assented to its provisions, or agreed to accept the mortgage to himself and to the Housatonic Manufacturing Company, as connected with or subject in any manner to the general assignment.

The case of *Green* v. *Kemp*, 13 Mass. 515, has been relied upon to show that as the plaintiffs took their mortgage subject to the prior mortgage, they cannot be permitted to deny its validity.   The objection to the first mortgage, in the case cited was, that it was void for usury.   The tenant had purchased the right of redemption.   It was held that a mortgage on a usurious consideration was void only as against the mortgagor and those who may lawfully hold under him.   But the mortgagor might waive that legal objection, and pay his debt, without availing himself of the defence of usury.   As between those parties, the mortgage was voidable, and not merely void. It would be in the power of the mortgagor to give validity to his deed, usury notwithstanding. But in the case at bar, the mortgagors had no such election or power.   They had given a preference, contrary to the statute, and they could not avoid or repeal the statute.   The extent, to which the doctrine of estoppel would apply, would be, that if this were a case between the first mortgagees and the plaintiffs, then the plaintiffs could not be permitted to deny that there was a prior mortgage : They must be considered as assenting and agreeing to hold subject to all the claims which the first mortgagees might by law enforce by virtue of their first mortgage.   But it could not be carried further.   The second mortgagees could not be concluded from showing that the first mortgage had been paid, or that, by force of the statute, it was merely void, notwithstanding all the good will of the mortgagors to make it good, and so that the first mortgagees were not entitled to recover any thing. The plaintiffs could not be precluded from showing that the first mortgage was, without their knowledge, procurement or participation, connected with the general assignment, in such a manner as to render it a mere nullity.   The plaintiffs do not claim under the first mortgagees, and the doctrine of estoppel, therefore, does not apply.

It has been contended that the plaintiffs should be affected with the constructive notice and assent, from the following facts, viz., that the attorney, who drew the mortgages and assignment, was a stockholder in the Lee Bank ; that Walter Laflin was a stockholder and director in the same bank, and assisted in drawing the mortgages, and knew that the attorney was drawing the assignment ; and that Wells Laflin, at the time of making the mortgages and assignment, was the owner of a share in the Housatonic Manufacturing Company. But we think that the legal inference from these facts cannot control the fact, expressly stated in the case, that neither Whitmore, the general agent, nor King, had any knowledge that said assignment was in contemplation, until after it was executed and delivered. And the rights of the Housatonic Manufacturing Company and of King, under their mortgage, were before fixed and vested in them. Besides, the knowledge which an individual, who is a mere corporator, might have, is not to be considered as constructive notice to the corporation. The draft of the assignment remained in the pocket of the attorney until after King went out to take possession of the property.

Under these circumstances, we are clearly of opinion that there is not sufficient evidence to affect King or the Housatonic Manufacturing Company with a knowledge of or participation in the general assignment, so as to put them upon the same footing as Perry and others, the first mortgagees, have been placed. The latter were trustees and parties to the general assignment. They were acting in concert with the insolvent debtors ; but the company and King, from the beginning to the end, acted adversely.

The plaintiffs claim to recover on the ground that their mortgage was a valid conveyance at common law ; and we think they have sustained their claim. There is not any evidence to show that Whitmore, agent of the Housatonic Manufacturing Company, and King, or either of them, had any knowledge of the general assignment until after the mortgage was delivered to them ; and there is no evidence sufficient to prove that they ever assented to connect their mortgage with that assignment. And no

lawyer will contend that the mortgagors could defeat their deed by a subsequent assignment with which the mortgagees had no concern.

It is the opinion of the court, that the plaintiffs are entitled to recover for all the property contained in their mortgage, in the same manner as they would have been if the mortgage to Perry and others had not been made ; and the cause is to be submitted to a jury to ascertain the damages, unless the parties agree to an auditor, or themselves agree upon the amount.